******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOV REALTY, LLC *v.* ANGEL SUAREZ ET AL.
(SC 21183)

KOSEL EQUITY, LLC *v.* MARK
MACGREGOR ET AL.
(SC 21184)

July 31, 2026

PER CURIAM. We are required to confront for the first time a lawyer's use of generative artificial intelligence (generative AI) that has resulted in the submission of written materials to this court containing citations that were "hallucinated"—in other words, fabricated or inaccurately generated. Attorney Ian G. Gottlieb and GLG Law, LLC (law firm), filed applications for certification to file public interest appeals in accordance with General Statutes § 52-265a in the two cases at issue. The applications included citations that were "hallucinated" because of the use of generative AI during the editing and review process. After the Chief Justice granted those applications, Attorney Gottlieb submitted briefs in each of these cases that also contained hallucinated citations. At a show cause hearing held on July 7, 2026, Attorney Gottlieb candidly admitted that his conduct, in filing documents that contained approximately seven erroneous and unverified citations as a result of the use of generative AI violated, at a minimum, rule 1.1 of the Rules of Professional Conduct. We must now consider the appropriate sanction for that violation.

The record and the representations to this court at the show cause hearing explain the facts concerning the relevant filings. Attorney Gottlieb initially used LexisNexis

to conduct the legal research necessary to draft his public interest appeal applications and the briefs that followed. He verified the accuracy of the quotations and citations in the initial rough drafts using the Shepard's Citations Service on LexisNexis. He then copied and pasted those drafts into ChatGPT, a generative AI program, to make his brief writing process more efficient and to improve the quality of the final written product. Unbeknownst to Attorney Gottlieb, the drafts produced by ChatGPT added new case citations or altered existing case citations, making the final documents filed in this court inaccurate and misleading. Because the hallucinations created by ChatGPT did not affect the substantive accuracy of the legal propositions contained within the filings, which remained well established and correct, the AI generated changes did not prompt Attorney Gottlieb or his law firm colleagues who reviewed the documents to verify the supporting citations a second time. Attorney Gottlieb became aware of the erroneous citations only when various amici curiae, represented by the Jerome N. Frank Legal Services Organization, apprised this court and counsel of what appeared to be "hallucinated" case citations in the briefs. Attorney Gottlieb subsequently filed errata sheets and corrected the briefs in both cases.

We then issued a sua sponte order requiring Attorney Gottlieb and the law firm to explain the cause of the erroneous material. In the memorandum filed in response to that order, Attorney Gottlieb and the law firm expressed their deep regret for the errors. They explained that the errors were caused when Attorney Gottlieb, whose original legal research and citations had been verified, used ChatGPT to improve the organization and quality of his rough drafts and that he was unaware that ChatGPT would make substantive changes to that material.

After rendering judgment in each appeal; see *Kosel Equity, LLC* v. *MacGregor*, 354 Conn. 842,    A.3d    (2026); *TOV Realty, LLC* v. *Suarez*, 354 Conn. 745, 357 A.3d 689 (2026); we sua sponte ordered Attorney Gottlieb and the law firm to appear and to show cause

as to why sanctions should not be imposed against them for submitting documents in these cases "that misrepresented the law through the use of generative [AI]." We also ordered Attorney Gottlieb and the law firm to file a memorandum of law in response to the show cause order to explain "the process by which generative [AI] was used . . . [and] what steps were taken, if any, to verify information generated by [AI] and [to provide this court with] a list of any and all unverified quotations, citations, arguments, or statements that were produced by generative [AI] . . . [that were] included in the documents filed. Additionally, [we specified that] the memorandum of law should indicate what remedial steps [were] taken by Attorney Gottlieb and [the law firm] to verify information generated by [AI] that is used in drafting legal filings."

At the show cause hearing, Attorney Gottlieb was represented by counsel. Attorney Gottlieb made a personal statement, taking full responsibility for the erroneous information, expressing a sincere appreciation for the seriousness of his conduct, and promising that he will be vigilant moving forward. He admitted, through counsel, that he filed documents in these matters containing a total of seven erroneous and unverified citations that resulted from the use of generative AI in the editing and review process. He further admitted that filing court documents in each of these cases with these erroneous and unverified citations violated the duty of competence prescribed by rule 1.1 of the Rules of Professional Conduct.[1] Counsel suggested that an appropriate sanction would be for Attorney Gottlieb to complete six hours of continuing legal education in the areas of legal ethics or law practice management, in addition to the annual obligation of twelve hours of minimum continuing legal education required by Practice Book § 2-27A, and for

---

[1] During the show cause hearing, we noted the potential applicability of rules 1.6, 3.3, 5.1, and 8.4 of the Rules of Professional Conduct. Given our conclusion with respect to rule 1.1, we need not decide whether the conduct of Attorney Gottlieb and the law firm violated any other rule.

Attorney Gottlieb or the law firm to pay a fine or charitable donation in the amount of $250.

The following legal background informs our decision in this case. The duty of "competent representation" under rule 1.1 requires an attorney to have "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Rules of Professional Conduct 1.1. Federal and state courts have uniformly held that submitting a brief or other legal document to a court that, as the result of the use of generative AI, contains erroneous, unverified, or "hallucinated" citations violates an attorney's duty of competent representation. *McCarthy* v. *United States Drug Enforcement Administration*, 171 F.4th 245, 247–50 (3d Cir. 2026); see, e.g., id., 250 n.3 (citing federal authorities); see also, e.g., *Park* v. *Kim*, 91 F.4th 610, 614–15 (2d Cir. 2024) (failure to check AI generated citations violates duty of reasonable inquiry into accuracy of court filings imposed by rule 11 (b) (2) of Federal Rules of Civil Procedure); *Cojom* v. *Roblen, LLC*, Docket No. 3:23-CV-1669 (JCH), 2025 WL 3205930, *2–4 (D. Conn. November 17, 2025) (same); *State* v. *Coleman*, 280 N.E.3d 1042, 1057, 1065 (Ohio App. 2026) (failure to check transcript quotations contained in court filing that were created by uploading materials related to case to generative AI application violated duty of competence prescribed by rule 1.1 of Ohio Rules of Professional Conduct), appeals accepted, Docket No. 2026-0547, 2026 WL 2098325 (Ohio July 21, 2026). These courts have also concluded that such violations of the applicable federal or state rules of professional conduct warrant the imposition of sanctions. In doing so, courts have explained that "[m]any harms flow from the submission of fake [case citations]. The opposing party wastes time and money in exposing the deception. . . . Judicial resources are diverted from other pressing, legitimate work. And [t]he client may be deprived of arguments based on authentic judicial precedents." (Citation omitted; internal quotation marks omitted.) *Garner* v. *Kadince, Inc.*, 571 P.3d 812, 815 (Utah App. 2025). "The oversight in submitting fake citations is more than

just sloppy lawyering: it imperils the integrity of our judicial process." *Cojom* v. *Roblen, LLC*, supra, *3. Even if counsel's submission of such faulty citations was not intentional—and, in the present case, we find no intention to deceive—counsel's carelessness "strikes at the foundation of the adversarial system, which depends [on] the assumption[s] that the legal authorities and evidence cited by counsel are real and [that] the factual representations made to the court are accurate. When [those] assumption[s] [are] violated—whether through intentional fabrication or reckless reliance on [AI generated] content—the entire system is compromised." *State* v. *Coleman*, supra, 1070.

In light of Attorney Gottlieb's candid concession that his conduct violated rule 1.1 of the Rules of Professional Conduct, with which we agree[2], we must determine the appropriate discipline to impose pursuant to our inherent powers and responsibility for the administration of justice.[3] We have considered the aggravating and mitigating factors provided by standard 9.22 of the American Bar Association's Standards for Imposing Lawyer Sanctions. See A.B.A., Annotated Standards for Imposing Lawyer Sanctions (2d Ed. 2019) standard 9.22, p. 451 (listing aggravating factors); id., standard 9.32, p. 487 (listing mitigating factors); see also, e.g., *Lafferty* v. *Jones*, 236 Conn. App. 672, 687–88, 349 A.3d 73 (2025), cert. denied, 354 Conn. 920, 353 A.3d 840 (2026). In determining the appropriate discipline in

[2] Although we did not discuss this point during the show cause hearing, we emphasize that the duty of competence with respect to the use of generative AI in legal practice also includes recognition of its implications as to the attorney-client privilege, the confidentiality of information relating to an attorney's representation of a client, and the work product doctrine, particularly when a public access platform is involved. See, e.g., *United States* v. *Heppner*, 820 F. Supp. 3d 292, 296–99 (S.D.N.Y. 2026).

[3] As noted previously, counsel represented to this court that partners of the law firm in addition to Attorney Gottlieb reviewed the documents before they were filed. Although Attorney Gottlieb admirably accepted full responsibility for the erroneous material, the law firm shares responsibility given its failure at the time to have policies and procedures in place to address the responsible use of generative AI in the practice of law.

this case, we are mindful that the hallucinated citations resulted from negligence in the use of new technology, rather than an intentional attempt to deceive or mislead this court or other parties, Attorney Gottlieb did not have a dishonest or selfish motive, he cooperated with the disciplinary process by honestly and forthrightly responding to our requests seeking further information and understanding regarding the erroneous citations, he admitted his mistake, he showed sincere contrition, and he has no disciplinary history. Nevertheless, the submission of erroneous citations in violation of the Rules of Professional Conduct is not something we take lightly.

We therefore impose the following sanctions:

- In addition to the twelve **(12)** hours of minimum continuing legal education required annually by Practice Book § 2-27A, Attorney Gottlieb shall complete six **(6)** hours of continuing legal education in the areas of ethics and law office management, three **(3)** hours of which must concern the use of generative AI.

- Attorney Gottlieb and the law firm each shall donate $**1000** to the CT Bar Institute, Inc., to support its efforts to provide the legal profession with instruction in the areas of legal ethics and law office management, and regarding the role of generative AI in those areas.

- Attorney Gottlieb and the law firm shall file a report under these docket numbers in this court via the Office of the Appellate Clerk, along with a courtesy copy to the Statewide Grievance Committee, stating whether they have complied with these sanctions within six months of the issuance of this order.

- Attorney Gottlieb shall comply with the reciprocal discipline obligations of any other jurisdiction in which he has been admitted to practice law.

• This order will be posted on the Judicial Branch website, and a courtesy copy will be provided to the Statewide Grievance Committee. We emphasize that this courtesy copy is not a referral for further disciplinary action.

In arriving at this decision today, we do not reject the use of new and improved technologies in the legal profession. Instead, we emphasize that all legal professionals must be acutely aware of the risks and dangers that accompany these technologies, and attorneys must take all steps necessary to ensure that such innovations are utilized with the utmost care and attention to their professional obligations. Indeed, the judges of the Superior Court have recently adopted a new rule of practice addressing the risk that "generative AI can create inaccurate factual and legal information," and requiring that "any person who uses generative AI in the creation or editing of any document filed with the court . . . independently verify all citations, legal authorities or evidence produced by generative AI." Practice Book § 4-9 (b) (effective June 23, 2026), in 87 Conn. L.J., No. 52, p. 15PB (June 23, 2026); see also Practice Book § 4-2 (b) (effective June 23, 2026), in 87 Conn. L.J., No. 52, p. 14PB (June 23, 2026) ("[t]he signing of any pleading, motion, objection or request" constitutes, among other things, certification of signer's compliance with Practice Book § 4-9). The judges of the Appellate Court and the justices of this court have also recently adopted amendments to the Rules of Appellate Procedure in order to address concerns regarding the use of generative AI in court filings. See Practice Book § 62-6 (d) (effective July 14, 2026), in 88 Conn. L.J., No. 3 (July 14, 2026) (appellate analogue to Practice Book § 4-2 (b)); Practice Book § 85-2 (11) (effective July 14, 2026), in 88 Conn. L.J., No. 3 (July 14, 2026) (failure to comply with Practice Book §§ 4-9 and 62-6 (d) is sanctionable conduct). This order should serve as a reminder to all members of the legal profession to learn about the risks and limitations of the technologies they use in the practice of law because they

remain personally responsible to make certain that all information submitted to the court is true and accurate.

———————